Bergen *v.* Clarkson.

---

BERGEN *against* CLARKSON.

### ON CERTIORARI.

Where the freeholders and inhabitants of a city are empowered by the charter of incorporation, to raise by tax, in the manner directed by the charter, such sums of money as the exigencies of the city may require, a tax imposed for the purpose, as declared in the law, of raising money to assist the county in building a court house, on condition that the board of justices, &c., would contract to allow the corporation the right of the buildings which might be erected, is not authorized by the charter, and the law by which it is laid is void: the board of justices, &c., cannot legally enter into any such stipulation, and therefore the foundation of the transaction fails.

Bergen *v.* Clarkson.

When the common council calls an extraordinary meeting of the freeholders, &c., *it seems* it is bound to state particularly the objects of the call: but if it does specify a particular purpose, a law imposing a tax for a certain object, passed at such meeting, unless it was stated among the reasons for calling the meeting, is void.

All proceedings under the authority of a void by-law, imposing a tax, are themselves void, and such law is no justification of the acts of the person who undertakes to execute it.

When a tax has been legally assessed by a corporation clothed with competent powers, the proportion of it which each individual is bound to pay, becomes a debt which may be recovered in an action at the suit of the corporation; but unless they are expressly authorized by the charter, summary proceedings by distress and warrant of sale to collect this tax, though directed by a by-law, are void; and such by-law is no justification in an action of trespass brought against the officer executing the process, at the suit of a person whose goods have been seized.

---

This was an action of trespass, brought by Bergen against Clarkson, before the justice to which the original defendant had pleaded a special justification.

The case, as it came before the court, was as follows: By the eighth section of the act of the legislature of New Jersey, incorporating the city of New Brunswick, (*Paterson* 56) it is enacted, "that the freeholders and inhabitants of the said city of New Brunswick, shall, by plurality of voices, at their annual meeting for electing the officers of the said city, vote such sums of money as they may think necessary for the exigencies of the said city, which sum shall be assessed upon the inhabitants by the assessor, at his discretion, and collected by the collector at such time, and be paid and disposed of in such manner, as the common council shall direct, and if no sum, or an insufficient sum, shall be then voted to be raised, and the interest of the city require it, the common council are hereby authorized to call a meeting of the freeholders and inhabitants, by advertisement or otherwise, and to propose to them the sum, in their opinion necessary to be raised, and whatever sum the freeholders and inhabitants shall, by

plurality of voices, vote to be raised, shall be assessed and collected, paid and disposed of, in manner aforesaid. *Provided* always, that if any person should think him or herself aggrieved by any assessment made, as in herein before directed, he or she may appeal to the common council, who are hereby authorized and required to hear and redress such grievance, if any there be in their opinion. *And provided also,* that no tax shall be levied upon, or collected from, any person who, from his local situation beyond the line of the buildings in the·said city, is not interested in the good purposes for which such tax is designed."

By an ordinance made the twenty-fourth day of November, one thousand seven hundred and eighty-five, "directing the mode of assessing and collecting the taxes levied on the inhabitants of the city," it is ordered, "that the assessor shall, within fifteen days after receiving notice of the sum to be raised, deliver the duplicate and assessment made thereon to the collector, who, within thirty days thereafter, is to collect the money and pay it to the treasurer; and at the same time to deliver in a list of the delinquents to the president or one of the directors, who shall, at the expiration of ten days, issue his warrant against such delinquent: *provided* that the collector shall not return any one as delinquent, unless he has, at least once, called at his place of abode for the tax, and left the amount, of which he shall make oath."

On the twenty-sixth of March, one thousand seven hundred and ninety-three, at a meeting of the common council, it was resolved to offer a grant of £300 to the board of justices and freeholders of the county of Middlesex, for the use of the said county, to be applied towards the building of a court house and gaol in the said city, on condition, that the board would grant to the corporation the use of those buildings for transacting the public business of the corporation, not interfering with the state or county use of them."

On the first of April, one thousand seven hundred and ninety-three, at a meeting of the common council, the committee, who had been appointed to wait upon the board of justices, &c., with the foregoing resolution, reported a resolution passed by the board, accepting of the offer on the terms and conditions proposed.

On the twenty-fifth of January, one thousand seven hundred and ninety-three, at a meeting of the common council, it was resolved to call a meeting of the freeholders and inhabitants of the corporation on Saturday, the second of February, one thousand seven hundred and ninety-three, "for the purpose of considering the propriety of raising money by tax, in order to become proprietors in the bridge to be erected over the Raritan river, in this city;" it was also directed that the clerk should advertise the resolution, &c.

The meeting was held on the second of February, one thousand seven hundred and ninety-three, pursuant to the notice given by advertisement, by order of the common council. At this meeting it was voted that the sum of £300 be raised, to be applied towards building a court house and gaol, on the conditions stated in the resolution of the common council.

March third, one thousand seven hundred and ninety-three, at a meeting of the common council, the president was directed to issue an order for assessing the above mentioned sum of money upon the inhabitants and freeholders of the corporation.

April twenty-second, and April twenty-ninth, an ordinance was proposed in the common council, and passed, directing the time of assessing and collecting this sum of £300; by which one moiety was directed to be assessed and collected by the eighth of May following, and the other moiety by the eighth of August ensuing.

The corporation limits of New Brunswick, as described in the act of incorporation, embrace parts of the two counties

of Middlesex and Somerset; and the tax in question was assessed upon all the freeholders and inhabitants of the city, as well those living in Somerset, as those in Middlesex county.

Among others returned by the marshal as delinquents in the non-payment of the portion of the tax assessed upon them, was Clarkson, who resided in that part of the city which is contained in the county of Somerset. In consequence of his omission or refusal to pay, a warrant of distress and sale was issued by one of the directors against his goods, by virtue and under the authority of which Bergen, the defendant below, the marshal of the city, made a seizure of the goods of Clarkson, and sold them to the amount of the tax assessed upon him.

This was an action of trespass brought against Bergen, for this seizure and sale, and a jury being regularly empanelled, and the act of incorporation, the ordinances of the common council, &c., being relied upon by the defendant as a justification, the jury gave a verdict for the plaintiff, for the full amount of the sales made by Bergen, and for this sum, judgment was entered by the justice.

*Leake* and *R. Stockton*, for the plaintiff in *certiorari*, insisted, that the facts set forth by him, amounted to a full and legal justification of his proceedings, and exonerated him from every species of liability, in consequence of what he had done. They contended—

1. That the tax in this case was legally voted and assessed upon the city. The objects for which the money was directed to be raised, was one peculiarly calculated to benefit the corporation. By assisting the board of justices and freeholders of the county in erecting a court house and gaol, the city would be enabled, at comparatively an inconsiderable expense, to furnish themselves with buildings necessary for their own use, and at the same time to reap all the advantage which must result to the town, from containing within

itself the court house and public buildings of the county.
A measure of this kind will ever prove mutually beneficial
to both the parties interested.   Each contributes a portion
of the expense, and neither party has any occasion for build-
ings of the nature of a court or town house, except at regular
and distant intervals.   A tax raised then, for such purposes,
is strictly and legally raised for the exigencies and interest
of the city, and therefore within the powers of the corpora-
tion.

If the object of the tax then, is legal and unobjectionable,
so, also, is the manner in which the authority was exer-
cised.   It was voted by the inhabitants in a regular manner,
at a town meeting lawfully convened by order of the common
council, and notified by public advertisement.   It was assessed
in the usual manner, pursuant to the terms of the ordinance
of November twenty-fourth, one thousand seven hundred and
eighty-five, which had been uniformly followed and acqui-
esced in.   The warrant from the director, to distrain and
sell the goods of the delinquent, to the amount of his pro-
portion of the tax, was in conformity with the established
usage of the city, since the original incorporation, in every
respect conformable to the mode of collecting state taxes;
and in itself a legal and proper mode of compelling an indi-
vidual to pay his quota of a tax which had been imposed
upon all, for purposes of general concern and convenience.

The first difficulty, which it is conceived, can, with any
show of reason, be urged against the propriety of these
proceedings, arises from the notice under which the town
meeting was held, at which this tax was voted, specifying
another purpose as the object of the meeting.   This diffi-
culty, however, it is presumed, will, upon examination,
prove insufficient to invalidate proceedings otherwise reg-
ularly conducted, and in themselves so important.   Neither
by the act of incorporation, nor in any other manner, are
the common council required on any occasion, to specify in
their notice for calling a meeting, the objects which it is

contemplated to propose for the consideration of the inhabitants. Every meeting has a right to originate and act upon any measures which may be deemed important. The specification, therefore, in the notice, that the meeting was convened in order to deliberate upon the expediency of becoming proprietors in the bridge, which it was proposed to erect, was useless and unnecessary, and could not restrain the meeting from exercising the functions and powers which belonged to it, in taking up and acting upon any measures that might be suggested.

Under the act of incorporation, all the powers relating to the voting of taxes, belong to the freeholders and inhabitants of the city, and the common council acts merely in a ministerial manner in convoking the meeting. If then, this body, by specifying in the notice which they issue, any particular purposes which they may think proper to state, as the subjects of deliberation, can restrict the meeting to the consideration of these particular objects, a controlling and unlimited power will be deposited in their hands, which they may employ to the most pernicious purposes. They may prevent the suggestion and adoption of any measure not perfectly agreeable to themselves, and thus defeat, in an irregular and indirect manner, proceedings over which, by the act of incorporation, no power is granted them.

Another objection had been urged to the regularity of these proceedings, which was, that a warrant to distrain and sell was improper, and that the corporation should have proceeded by summons and trial. To this it might be a sufficient answer to remark, that the act of incorporation does not prescribe any particular mode in which the taxes that are assessed shall be collected from the delinquents. A general authority is given to collect them "at such time, and that they should be disposed of in such manner, as the common council should direct." Under this general discretion it was contended, that it became the duty, and was clearly the right of the council,

Bergen *v.* Clarkson.

to direct such a mode to be pursued, as was most in accordance with that to which the people were accustomed, and which had been found the most beneficial in the collecting of state taxes. The ordinance of the city is founded upon this principle, and directs the president, or one of the directors, after receiving from the collector his statement upon oath, that he had once, at least, called at the house of the delinquent, and left the amount which was assessed upon him, to issue his warrant.

The course then pursued, is precisely the same as that in which other taxes are levied, and is reasonable, expeditious, and without expense. If any one thinks himself aggrieved by the assessment, he can have recourse to the common council, by appeal; or as is customary in the English practice, remove it to this court by *certiorari.* When so many safeguards against imposition are provided by the laws, in a plain and equitable manner, it would appear, indeed, like oppression, to subject a person who was delinquent to the additional costs of a suit in court. If he has voluntarily omitted to avail himself of the opportunities of redressing any error in the assessment, it seems like an acknowledgement of the regularity of the proceedings; and it would be superfluous, as well as burthensome and tedious, to compel the corporation to institute an action against every individual who had proved delinquent.

This question has been, however, put to rest in England, since the time of Queen Elizabeth. In *Clarke's case, 5 Co.* 64, which was an action of false imprisonment, the defendant justified the imprisonment, as having been made under a by-law of an incorporated town, in consequence of the plaintiff's having refused to pay a sum which had been assessed upon him. The court overruled the plea, and held the justification bad, on account of the imprisonment; but it was resolved, that they might have inflicted a reasonable penalty, but not imprisonment, which penalty they might limit to be levied by distress, or for which an action of debt might lay.

Independent, however, of this decision, the charter of incorporation itself sanctions this mode of procedure. In the sixth section of the act, fines and amercements are ordered to be imposed upon certain offenders, and the authority is expressly given, " all and every such fine and amercement to take, demand, require, and levy, by warrant issued under the hand and seal of the president or either of the directors, and directed to the marshal of the said city, who is hereby required and authorized to execute the same, for the use and benefit of the said president, directors, and assistants, and their successors, by distress and sale of the goods and chattels of the offenders, found within the said city." It can scarcely be urged, that a mode which is proper and correct in collecting fines and amercements, can be illegal in collecting taxes, or that a mode which the legislature have themselves prescribed for the former, can be objected to if applied to the latter. The common council, in directing these proceedings by warrant of distress and sale, evidently had it in view to conform their usage to that which had been recognized by previous custom, and to that which was prescribed by the legislature in analogous cases : and if there is any legal mode of exercising discretionary powers, this must be the one.

But, at farthest, the act of the town meeting on the 2d of February, was erroneous, and not void. The power of imposing taxes, peculiarly and exclusively belongs to the inhabitants of the corporation assembled in town meeting. It was then a subject clearly within their jurisdiction, and the functions were *prima facie* correctly executed. If the meeting was irregularly convoked, or if the money was improperly appropriated, their acts must stand and be held to be valid, until reversed or set aside in a regular or legal manner. If, then, the assessment was good and binding until it was vacated, however erroneously the meeting might have been convened, the officer may justify under the

process, as in all cases where the authority by whom it is issued has jurisdiction of the subject, however objectionable may be the manner in which the power is exercised.

This principle is found in 6 *Bac. Abr.* 569, where it is stated, that an officer who arrests another under a process irregularly issued is not liable to an action for a false imprisonment; for that it would be hard to punish a person who has done nothing more than execute the process of a court to which he owed obedience. In the same book, p. 570, it is further stated, that it has been holden in another case, in which all the authorities appear to have been well considered, that the party at whose suit J. S. has been arrested under the process of an inferior court, is not liable to an action of trespass, although the cause of action did not arise within the jurisdiction of the court. *Perkins* v. *Proctor*, 2 *Wils.* 653 ; *Ladbroke* v. *Cricket*, 2 *Term Rep.* 649.

*Frelinghuysen* and *A. Ogden,* for the defendant in *certiorari,* contended—1. That the proceedings of the corporation, in the assessment of the tax in question, were void, and, therefore, the warrant being a nullity, afforded no justification to the officer acting under it.

2. That no authority was vested by law in the corporation, to enforce the payment of a tax legally assessed, by a warrant of distress and sale ; that, therefore, such warrant was illegal, and is no justification of the officer.

1. The by-law or act assessing the tax is illegal, because it is repugnant to the law of the land. Independent of any clause in the charter of incorporation, whenever special powers are not given, or modes of executing these powers prescribed in the very institution of these bodies, a condition is always annexed to the law, that their proceedings shall conform to, or at least shall not violate, the general provisions of the law. 2 *Bac. Abr. Chamberlain of London's case,* 5 *Co.* 63. (See 1 *Woodes* 495 ; 1 *Com. Dig.* 156.) This necessary restriction to the exercise of all cor-

poration powers is expressly mentioned in the sixth section of this act; and the by-law must therefore appear to be agreeable to the directions of the charter, and conformable to the general law of the country.

This tax and assessment, as set forth by the corporation itself, appears to have been laid for the purpose of aiding in the erection of a court house and gaol for the benefit, and to be the property, of the county of Middlesex. This unquestionably was not to provide for the exigencies of the city; and if the entire city had been embraced within the limits of the county which it was intended to benefit, it might fairly be questioned, whether the act was authorized by the charter? Every doubt, however, upon this point must be removed, when it is recollected that the city limits embraced a part of the two counties of Somerset and Middlesex. So far as the effect of this by-law is to compel the inhabitants of the county of Somerset to contribute to erect and support the public buildings of another county, it is loading them with an extraordinary burthen, and is manifestly illegal.

Nor can this difficulty be obviated by annexing such conditions to the grant as have been added to this. The powers and authorities delegated to the board of freeholders are as clearly defined and limited by the law, as those conferred upon the city corporation. No authority is vested in them to enter into any contract under which any person should use or occupy the public buildings of the county for any other than county purposes. Such an engagement by them, is therefore void and nugatory; and the consideration upon which the tax was imposed and assessed being invalid or unlawful, the whole proceedings must fall to the ground.

But this tax was illegally laid in another manner. The meeting of the inhabitants and members of the corporation was summoned for the purpose of considering the expediency of raising moneys to purchase stock in the bridge company. The specific object of the meeting was stated in the resolu-

tion and notice, and it would lead to consequences of a most pernicious kind, if such proceedings were sanctioned. The presumption is, when a particular purpose is specified, that those who attend the meeting come to consider and deliberate upon the propriety of the avowed measure ; those who staid away, did it under the impression that no other matter of consequence would be introduced. Many persons might reasonably be presumed to be ready to acquiesce in whatever determination might be made, or in that which they knew would be made relative to a particular proposition, who would zealously oppose another having different objects in view. It would be establishing an extremely bad precedent, and opening the sluices of corruption and imposition to allow a certain specified measure to be stated as the object for which the meeting was called, and then to introduce and act upon another, which, had it been fairly held out, would have ensured the presence of all who might be opposed to it.

2. If, however, the tax in question was legally imposed, and for legal purposes, and the assessment upon the plaintiff below unobjectionable and valid, yet the warrant to levy the amount, by distress and sale of the goods of the delinquent, was void without a previous conviction or judgment of delinquency.

Even the ordinance of November 24, 1785, under the authority of which this proceeding seems to have been founded, though intended to direct the mode of assessing and collecting taxes, does not authorize a warrant of distress and sale against the property of the delinquent. The by-law alluded to authorizes the president, or one of the directors, " to issue his warrant against such delinquent," but prescribes no form in which it is to be drawn up, and no mode of execution. The term *property or goods* is not introduced, and it may, with as much reason, be understood to mean a warrant to bring the person before the president or directors by whom it was issued, as a summary process against his goods.

If, however, this form of proceeding had been expressly prescribèd in this ordinance, no corporation, without an express power given in the charter, can legally make a by-law authorizing a warrant of execution against the property of an individual, without affording him some opportunity of having his defence heard and determined. In the case of *Clerk* v. *Tucker*, 2 *Vent.* 132, it is expressly held, that a corporate body having power to make by-laws, cannot make one to which a penalty is annexed, and direct this penalty to be recovered by distress and sale of the defendant's goods. (See 2 *Inst.* 47, *Kirk* v. *Nowell*, 1 *Term Rep.* 118.)

The sixth section of the act of incorporation authorizes the president, or either of the directors, to issue a warrant of distress and sale in the case of a fine or amercement : but this constitutes no ground for extending the power to other cases. In the construction of all grants of authority, contrary to the common law, it is not only conformable to the received custom of courts of justice, but highly reasonable in itself, to restrain them within the terms and obvious meaning of the legislature. They ought not be unnecessarily extended by implication.

According to this rule, as the power which has been exercised has not been expressly granted, it cannot be considered as implied from the nature of the charter, unless it is necessary to enable it to fulfill the objects and ends of its institution. The prescribing this same mode for another purpose, so far from furnishing a ground for a further extension of it, is an argument which ought to operate, with at least equal force, the other way ; and it might, with much greater plausibility, be urged, that where the legislature intended it should be employed, it was bestowed, where they did not, it was withheld.

Had the party been permitted to defend himself before a regular tribunal of justice, he might have proved, that he had already paid his quota, as it was assessed upon him; he might have shewn, within the meaning and spirit of the

act of incorporation, that he had no interest in the proposed measure, and would derive no benefit from its adoption ; or he might have proved, that no demand, such as is required by the by-law, had ever been made of him. By this summary proceeding, he is effectually precluded from all these possible defences, either of which ought to have availed.

This is not a case in which the distinction that has been taken between void and voidable acts can apply. Either the proceedings were legal, and consequently valid, or they were illegal, and therefore a nullity. A by-law is not a judicial act which is presumed to be good until set aside, or which, however erroneous it may be, must stand until it is reversed ; but it is a case wherein certain delegated powers are granted, and it must be shewn, by the person who acts under them, that he has pursued the directions, and complied with the conditions, which the grantor has deemed it expedient to annex to the exercise of the authority. It is the act of a special legislative body, who being, by the terms of their institution, restricted to legislate in a certain manner, and on certain subjects, have made a law in a mode, and for a purpose different from those recognized in their charter. Any one, therefore, against whom it is attempted to enforce such an act, and by such means, has a right to say the whole proceeding is illegal and invalid ; and the court before whom the question is brought, is to decide upon this question of absolute validity or invalidity.

There is no case to be found in which this distinction between void and voidable has been applied to the by-laws of corporations. The single question uniformly is, is the by-law good or not ? The case of *Clerk* v. *Tucker* furnishes a conclusive answer to this suggestion. There the by-law was made upon a subject unquestionably within their jurisdiction : the only objection that was urged, was to the manner in which it was to be enforced. The court held that it was void, so far as it related to the warrant to distrain and sell, and the officer who justified under this law and process was nevertheless held a trespasser.

KINSEY C. J. delivered the opinion of the court. In this case, two questions occur for our consideration.—1. Whether the tax imposed by the town meeting, at the meeting on the 2d of February, 1793, was authorized by the charter of incorporation ?

2. Whether, supposing the tax to have been legally voted and assessed, the warrant of distress and sale, under which the alleged trespass was committed, was a lawful process, or affords a sufficient and legal justification of the officer ?

We are of opinion, on the first point, that the tax in question was not laid pursuant to the charter ; and this opinion is founded on several grounds.

1. The professed object of the tax was to purchase of the board of justices and freeholders an interest in the court house of the county of Middlesex, for the purpose of accommodating the corporation with public buildings. It is certain that the board could make no such contract with the corporation ; the consideration, therefore, or the object of the tax, was void. The money thus raised, and thus appropriated, was not applied to the exigencies of the city ; it was raised for a purpose which had no legal existence, and appropriated as a mere gift to the county. The effect, therefore, was to compel the inhabitants of the corporation residing on the Somerset side of the city, who had to build and maintain a court house of their own, to assist in defraying the expenses of the public buildings of another county. In this point of view, we consider the tax as illegally imposed, and as not authorized by the charter.

2. We look upon this vote or proceeding as void upon another ground. The meeting of the 2d of February was avowedly called by the common council, not for the general purposes of laying taxes, or supplying the deficiencies in the preceding annual appropriation, but for the special purpose of considering the propriety of raising money, " in order to become proprietors in the bridge to be erected over the Raritan river." This is the only object of the resolution

Bergen *v.* Clarkson.

passed by the common council on the 25th of January, 1793, for calling the town meeting, and it was the only object to which the attention of the citizens was directed in the advertisement by which they were called together. At the meeting held in consequence of this resolution and advertisement, the persons present take no notice of the matter which had been publicly announced, as the one that was to come under consideration, or of the resolution and proposition made by the common council; but they introduce a subject altogether foreign to the avowed purpose, and pass a vote for raising £300, to "build a court house and gaol, in the city, for the use of the county of Middlesex," on condition, however, that the freeholders should assure the benefit of these buildings to the citizens.

We are of opinion that this vote, being wholly beside the special purpose of the meeting, as stated in the resolution of the council and the public notice, was void.* The injurious consequences which might result from establishing the principle, that the common council may summon the inhabitants to raise money for our purpose, which perhaps being obviously necessary or advisable, they may be induced to remain at home, and the assembly thus convened may impose a tax for another, and altogether distinct purpose, are so manifest as to require no illustration. It is not a sufficient answer to this, to say, that the common council were not obliged to specify the objects of the meeting in their summons or notice: we think, however, that this ought always to be done on special meetings. (See 2 *Bur.* 735.) In this case it was done; a particular purpose was announced, and the meeting could not essentially vary from it. If another proposition, altogether different in its nature, was suggested, another meeting might and ought to have been convened.

---

* This principle is laid down in 2 *Bac. Abr.* 18; but the cases of *Musgrave* v. *Nevinson*, 1 *Str.* 583, 2 *Lord Ray*, 1858, and *King* v. *Strangeways*, cited by Lord Hardwicke, *Ca. temp. Hardw.* 142, in the case of *King* v. *Mayor, &c. of Shrewsbury*, do not come quite up to the doctrine. The cases of *the King, Mayor, &c. of Carlisle*, 1 *Str.* 385; *Machell* v. *Nevinson*, 2 *Lord Ray*, 1355; Justice Wilmot's opinion in *Rex* v. *Liverpool*, 2 *Bur.* 735, and *Rex* v. *Mayor, &c. of Doncaster, Ib.* 735, approach much nearer to it. See also 11 *East* 84.

For these reasons alone, without entering into the particular circumstances, which in this case furnish strong suspicions of intentional and premeditated deception in this double faced transaction, we are of opinion, that the vote of the second of February, 1793, imposing a tax of £300 upon the citizens of New Brunswick, for the purposes set forth, was illegal and void; and of consequence, that the assessment of it; the ordinance directing the time of its payment; the duplicates, and warrant of distress, having no valid foundation, are all likewise void. (See *Head* v. *Providence Ins. Co.*, 2 *Cranch.* 127.)

2. Being of this opinion upon the first point of the case, as to the illegality of the tax itself, it might be unnecessary to consider the propriety of a warrant of distress and sale, which was the second question proposed. In a matter, however, of so much moment, we conceive it our duty to pave the way, at least, for a final settlement of this law, in order to prevent the expense and trouble which must be incurred in obtaining a decision upon it in another case.

If the tax in question had been legally imposed, we are clearly of opinion, that, by the terms and spirit of the charter, the corporation are not authorized to collect it by a warrant of distress and sale, upon the return and oath of the collector, that the person assessed is a delinquent.

When a tax is assessed, if it has been done in a legal manner, the quota apportioned upon each individual becomes a debt, and, if not paid, must be recovered by the corporation in due course of law; unless where the charter authorizes proceedings of a more summary kind; or unless a corporation is empowered by the common law to enact a by-law prescribing the mode in which their debts may be collected.

With regard to the charter by which the city of New Brunswick holds its corporate existence, it gives no such power, as is contended for, in general cases. It expressly authorizes a warrant of distress and sale in the case of fines

and amercements, which being particularly specified, would seem, if any such argument was necessary, to exclude this mode of proceeding in all other cases.

By the common law, we consider it as clear, that corporations cannot make a by-law to enforce the payment of taxes, fines, amercements or forfeitures, by warrant to distrain and sell the goods of the party who may have omitted to discharge his legal dues. The case of *Clerk* v. *Tucker* is in point, and, as we conceive, states the correct doctrine upon this question. The distinction which it has been attempted to take between a fine or amercement and a tax, is groundless and novel; if the goods of one actually convicted of an offence, under a special by-law, and fined, cannot be levied by distress and sale, the very mode pointed out in such by-law *a fortiori*, it cannot be done for the mere non-payment of a tax, and that delinquency established by the *ex-parte* relation and oath of the collector.

It is no answer to this to say, that this is the mode in which the state taxes are collected; because there is an express law authorizing and directing it, and there can be no question as to the authority of the legislature to enact such a law. From the powers which are vested in the supreme legislative body of the county, no inference can be drawn to prove the powers of inferior corporations. A body of this kind can make no law which contravenes the common or statute law of the community, which tends to despoil the citizen of his birth right, unless such power is actually and expressly given them by charter. The act of incorporation does not, in the present case, vest such an authority; on the contrary, it expressly provides, in the sixth section, that their ordinances " shall not be repugnant to the laws of New Jersey."

Upon the whole, we are of opinion—1. That there has been no legal vote for raising this money, and that the whole proceeding was an act of usurpation, and void.

2. That the process issued by the director was void, and no justification to the officer ; he must be answerable to the party injured, and look for indemnity to those under whose usurped authority he has acted.

Let the judgment be affirmed.